UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | |
|---|---|
| LESLIE SWARTOUT, JR., #362403, | ) |
| Plaintiff, | ) Case No. 1:07-cv-315 |
| v. | ) Honorable Robert J. Jonker |
| THOMAS LaNORE, P.A.,[1] | ) **REPORT AND RECOMMENDATION** |
| Defendant. | ) |

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. Plaintiff is currently a parolee. (docket # 76). The defendant is Thomas LaNore, P.A.[1] Plaintiff's claim is based on the medical care that plaintiff received from defendant between July 14, 2006 and February 12, 2007 at the West Shoreline Correctional Facility (MTF). Plaintiff alleges that defendant's treatment of his high blood pressure and abdominal pain constituted deliberate indifference to serious medical needs in violation of plaintiff's rights under the Eight Amendment's Cruel and Unusual Punishments Clause. Plaintiff seeks an award of monetary damages.

The matter is now before the court on defendant's motion for motion for summary judgment. (docket # 64). On January 7, 2009, plaintiff filed his response to defendant's motion (docket # 71). For the reasons set forth herein, I recommend that defendant LaNore's motion for

---

[1] Defendant is referred to in the complaint as "Asst. Physician Lenore." (Compl. at ¶ IV, docket # 1). The case caption has been amended to include the defendant's first name and the correct spelling of his last name.

summary judgment be granted, and that a final judgment be entered in favor of defendants LaNore, Hutchinson, and CMS.[2]

## **Applicable Standards**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *S.S. v. Eastern Ky. Univ.*, 532 F.3d 455, 452 (6th Cir. 2008). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *El Bey v. Roop*, 530 F.3d 407, 413 (6th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir.

---

[2] On August 28, 2008, the court entered an order granting the motion for summary judgment by defendants Correctional Medical Services, Inc. (CMS) and Craig Hutchinson, M.D. (docket # 58).
  On February 13, 2009, plaintiff filed a new lawsuit against CMS, Dr. Craig Hutchinson, Thomas LaNore, P.A. and Dr. Darrel Brady. *See Swartout v. Correctional Med. Servs., Inc.*, et al., No. 1:09-cv-132 (W.D. Mich. 2009). This case was assigned to United States District Judge Janet T. Neff. It will be up to Judge Neff to determine the preclusive effect of a final judgment entered in this case on plaintiff's claims in case no. 1:09-cv-132.

2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Helms v. Zubaty*, 495 F.3d 252, 255 (6th Cir. 2007). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Daniels v. Woodside*, 396 F.3d 730, 734 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252); *see Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 398 (6th Cir. 2007).

**Facts**

The following facts are beyond genuine issue. On July 28, 2006, shortly after plaintiff began his incarceration at the West Shoreline Correctional Facility (MTF), he was examined by Physician's Assistant Thomas LaNore. Plaintiff had no shortness of breath, dizziness, palpations, edema, nausea, fatigue or sweating. Plaintiff reported that he had briefly experienced a rash from a wool blanket, but the rash had resolved itself before this examination. Plaintiff's blood pressure was 148/102. He was 5 feet 9 inches tall and weighed 206 pounds, yielding a body mass index (BMI) of 30.48. Plaintiff's blood tests revealed a high level of triglycerides, which defendant LaNore attempted to reduce by prescribing niacin. LaNore encouraged plaintiff to increase his exercise level and control his diet. Plaintiff's blood pressure remained high despite months of

treatment with Mevacor, Maxzide and aspirin. Defendant LaNore ordered lipid profile tests and directed that plaintiff's blood pressure be tested twice a day for two weeks. (docket # 64, Ex. A at 1-11; Ex. B, LaNore Aff. ¶ 4).[3] On August 8, 2006, LaNore ordered that plaintiff's blood pressure be tested three times over the next week. He further ordered an increase and change in plaintiff's medication to address plaintiff's continued elevated blood pressure. (Ex. A at 12-13; Ex B, LaNore Aff. ¶ 5). On August 18, 2006, defendant LaNore ordered continued regular testing of plaintiff's blood pressure and again adjusted plaintiff's medication. (Ex. A at 15; Ex. B, LaNore Aff. ¶ 6).

On September 6, 2006, a nurse at MTF checked plaintiff's blood pressure five times at specific intervals as part of the ongoing medical effort to get plaintiff's hypertension under control. The tests returned an average blood pressure of 143/102. Plaintiff's weight was 208 pounds. He gave a history of abdominal discomfort. He stated that approximately ten months earlier, prior to his incarceration, he went to a Chicago hospital's emergency room "for 'falling out.'" (docket # 71, Ex. 1). Plaintiff left the Chicago hospital before tests were performed. The MTF nurse examined plaintiff. The examining nurse described plaintiff's abdomen as being soft and tender. (*Id.*). On September 12, 2006, defendant LaNore ordered an abdominal x-ray. (Ex. A at 16). The x-ray returned normal results. (Ex. A at 88; Ex. B, LaNore Aff. ¶ 8). Plaintiff's blood pressure remained somewhat elevated despite his prescriptions for increased dosages of Maxide and Tenormin. Defendant LaNore augmented plaintiff's treatment regimen with Capoten and niacin and continued the regular blood pressure testing. (*Id.*).

---

[3] The exhibits referenced herein, unless otherwise specified, are the exhibits attached to defendant's brief in support of his motion for summary judgment (docket # 64).

On October 17, 2006, LaNore examined plaintiff. Plaintiff's progress notes indicate that plaintiff's blood pressure was being treated with Lopid, Capoten, Tenormin, aspirin, and niacin. (Ex. A at 24). Plaintiff's blood pressure was 134/98. Plaintiff had gained a pound rather than losing weight. His BMI was 30.63. (Ex. A at 23). Defendant LaNore met with plaintiff and discussed the role an increased level of exercise would play in plaintiff's treatment plan. (Ex. A at 25; Ex. B, LaNore Aff. ¶ 9).

On November 1, 2006, plaintiff refused the prescribed niacin. Defendant LaNore responded by adjusting plaintiff's medications. On November 8, 2006, plaintiff complained to a nurse that he was experiencing abdominal discomfort. On November 9, 2006, defendant consulted with Dr. Ivens regarding plaintiff's condition and ordered additional tests. (Ex. A at 31). In response to plaintiff's reported history of an abdominal mass, LaNore informed plaintiff of the possibility that the purported mass could be an "Adrenal tumor" or "renal artery stenosis/tumor." (*Id.* at 32). LaNore ordered testing of plaintiff's "urinary catecholamines and urinary metanephrines." If these urine tests returned normal results, he would consider a CT scan or MRI of plaintiff's abdomen. (*Id.*). Progress notes dated November 28, 2006 reveal that plaintiff's initial urine sample taken proved to be deficient for testing. Defendant LaNore ordered another urine sample draw and completion of the tests he ordered earlier that month. (*Id.* at 33). Plaintiff's abdominal x-rays returned normal results. His blood pressure remained high. (LaNore Aff. ¶¶ 10-13).

Defendant LaNore examined plaintiff on December 12, 2006. The urine test results had ruled out the possibility of an adrenal gland tumor and pheochromocytoma. Plaintiff's blood pressure was 141/102 and he weighed 206 pounds. Defendant LaNore again directed plaintiff to increase his exercise level and lose weight. LaNore ordered continued monitoring of plaintiff's

blood pressure, adjusted plaintiff's medications, and ordered additional tests. (Ex. A at 34-41; Ex. B, LaNore Aff. ¶ 14).

Defendant next examined plaintiff on January 4, 2007. Plaintiff had gained two pounds, bringing his weight up to 208 pounds. His blood pressure was 161/106. LaNore increased plaintiff's blood pressure medication. Defendant LaNore requested approval for an abdominal CT scan, which was denied by the supervising doctor. (Ex. A at 42-43; Ex. B, LaNore Aff. ¶¶ 15, 16). On January 19, 2007, plaintiff complained of abdominal pain. Progress notes entered by a nurse at 5:46 p.m. stated that a "consult request for [a] CT scan [had been] denied by CMS," but the nurse had also been advised "to send [plaintiff] to the ER if he ha[d] increasing abdominal pain." (docket # 71, Ex. 1). A short time later, plaintiff was transported outside the prison to Hackley Hospital, where he was examined at 7:20 p.m. by Tod A. Wyn, M.D. Dr. Wyn found that plaintiff was alert and not in any acute distress. Plaintiff's primary complaint was abdominal pain. Plaintiff did not have a fever, and he had not experienced vomiting or diarrhea. Plaintiff related that his abdominal discomfort was "sometimes sharp and sometimes crampy." Plaintiff reported that he was taking the following medications: "Lovastatin, atenolol, captopril, Lopid, Maxzide, [and] aspirin." His blood pressure was 156/102. (docket # 35, Ex. 3). A CT scan of plaintiff's abdomen showed "mild" fatty infiltration of the liver. Radio dense material could be seen within the gallbladder that was consistent with gallstones, but there was "no evidence of significant intrahepatic billary dilation." Plaintiff's kidneys showed no evidence of hydronephorosis. (Ex. A at 86). Dr. Wyn described plaintiff's CT scan results as "unremarkable." (docket # 35, Ex. 3). Plaintiff's abdomen was "very benign." Dr. Wyn treated plaintiff's abdominal discomfort of unknown etiology with Bentyl. Dr.

Wyn advised plaintiff that he found "no evidence of any acute surgical or infectious condition." (*Id.*).

On January 22, 2007, Physician's Assistant LaNore examined plaintiff. Plaintiff's weight remained unchanged at 208 pounds. Plaintiff complained of intermittent abdominal discomfort. LaNore's assessment of plaintiff's condition was abdominal pain of unknown etiology, possibly reflux. Plaintiff was again informed that his CT scan had returned normal results and that he did not have an abdominal tumor. Plaintiff related that he had not taken the Bentyl that had been prescribed for him by doctors at Hackley Hospital. Defendant LaNore provided plaintiff with a prescription for Bentyl and a new prescription for Zantac to address plaintiff's possible acid reflux. (Ex. A at 44). On February 5, 2007, defendant LaNore requested a general surgical consultation for a medical assessment whether surgery to remove plaintiff's gallbladder would be appropriate given the results of plaintiff's CT scan. (Ex. A at 48).

Although plaintiff's complaint concerns the medical care that defendant provided to plaintiff during the period from July 14, 2006 through February 12, 2007, the evidence shows that plaintiff continued to receive extensive medical care after the period at issue. On March 19, 2007, plaintiff submitted a medical kite stating that the Bentyl he was taking was not adequately relieving his symptoms and that he desired an examination by a specialist. Plaintiff was provided with "Tylenol ES" for his discomfort and was scheduled for an examination by a specialist. (docket # 35, Ex. 5). On March 21, 2007, plaintiff was transported outside the prison for his appointment with a specialist, Dr. Brian Gluck. Dr. Gluck recommended that plaintiff undergo surgery to remove gallstones. Plaintiff was provided with pain medication and Bentyl for his gastric issues while his surgery was pending. (Ex. B, LaNore Aff. ¶ 22). On March 26, 2007, plaintiff filed his complaint. On May 25, 2007, Dr. Gluck performed surgery in which he removed plaintiff's gallbladder and

repaired a small umbilical hernia. (docket # 35, Ex. 6). Plaintiff returned to MTF on May 26, 2007. There is no evidence that plaintiff suffered from any post-operative medical complications. (*Id.*, Ex. 7).

## Discussion

Plaintiff alleges that the medical care defendant LaNore provided violated his Eighth Amendment rights under the Cruel and Unusual Punishments Clause. In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05. In judging the sufficiency of "deliberate indifference" claims, the court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention. *Westlake v. Lucas*, 537 F.2d 857, 860 n.4 (6th Cir. 1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard. Under *Wilson*, a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). 501 U.S. at 298. No reasonable trier of fact could find in plaintiff's favor on either component of an Eighth Amendment claim.

The objective component of the Eighth Amendment standard requires that a plaintiff be suffering from a serious medical condition. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth

Amendment violation only if those needs are serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "[D]elay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute a constitutional violation." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2005). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* A non-obvious need for medical care can satisfy the "serious" medical need requirement, but "the inmate must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005); *see Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001). The mere presence of a serious medical condition is insufficient to establish the objective component. The plaintiff must make "an 'objective' showing that the deprivation was 'sufficiently serious' or that the result of the defendant's denial was sufficiently serious." *Hudson*, 508 U.S. at 8; *see Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003). Plaintiff falls far short of satisfying the objective component. He has not presented evidence that defendant LaNore caused an objectively serious deprivation. *See Clark-Murphy v. Foreback*, 439 F.3d 280, 286-87 (6th Cir. 2006). Defendant LaNore provided plaintiff with regular and extensive medical treatment.

The second prong under *Estelle* requires a showing of "deliberate indifference" to plaintiff's serious medical need. The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness. A prison official cannot be found liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837. The

Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> The subjective component, by contrast, requires a showing that the prison official possessed a sufficiently culpable state of mind in denying medical care. Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. The prison official's state of mind must evince deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference. Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Miller*, 408 F.3d at 813 (citations and quotations omitted); *see Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) ("The subjective standard is meant to prevent the constitutionalization of medical malpractice claims . . . ."); *accord Mabry v. Antonini*, 289 F. App'x 895, 903 (6th Cir. 2008) ("'Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and constitutionalize claims which sound in state tort law.'") (quoting *Westlake*, 537 F.2d 860 n.5).

Plaintiff argues that defendant should have prescribed "cata-press" [sic] for his hypertension:

> Even as PA Thomas LaNore treated plaintiff's hypertension, all he ever did was kept increasing the dosage on the Plaintiff's medication to try and control it, not once does it show where he prescribed cata-press which would [have been] guaranteed to bring Plaintiff's hypertension or High Blood Pressure back to where it belongs.

(Plf. Brief at 5, docket # 71). Plaintiff presented no medical evidence that the numerous antihypertensive agents prescribed by defendant LaNore were inappropriate, much less that his failure to prescribe Catapres (*see Physician's Desk Reference*, 843-44 (61st ed. 2007)) was

criminally reckless. There is no evidence that the medical care plaintiff received from defendant was medically deficient. Plaintiff's disagreement with defendant LaNore's diagnosis and treatment falls far short of supporting an Eighth Amendment claim. *See e.g.*, *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 357 (6th Cir. 2006); *Kirkham v. Wilkinson*, 101 F. App'x 628, 630 (6th Cir. 2004).

Plaintiff now argues that his gallstones "ha[d] nothing to do with the pain in [his] abdominal region." (Plf. Brief at 6). Fluctuating abdominal discomfort, however, is well-recognized as a common clinical consequence of gallstones. *See, e.g.*, *The Merk Manual*, 400-01 (17th ed. 1999). Plaintiff underwent two surgical procedures in 2008 to address problems with his left kidney. (Plf. Brief at 4). He emphasizes that defendant LaNore wrote the following in a November 9, 2006 progress note: "regarding his stated [history] Hx of abd[ominal] mass [LaNore and plaintiff] [d]iscussed Adrenal tumor as a pos[sibility] vs. renal artery stenosis/tumor." (docket # 71, Ex. 2). Plaintiff interprets this document as showing that defendant "suspected" that he had "renal problems" and that LaNore "FAILED and/or NEGLECTED" to address them. The referenced progress note addressed plaintiff's claim that he had an abdominal mass and it identified possible causes for an abdominal mass. Plaintiff's tests, including a CT scan, showed that he did not have an abdominal mass. The November 2006 progress note does not show that defendant "suspected" that plaintiff had renal problems. The medical evidence shows that plaintiff had multiple tests including urine tests, x-rays, and a CT scan which failed to reveal any medical problem involving plaintiff's kidneys. Even if defendant LaNore had "suspected" that plaintiff had some sort of renal problem but failed to find it, and further assuming that such a claim had been alleged in plaintiff's complaint, the claim would have been, at most, a patently deficient state-law medical malpractice

claim.[4]  There is no medical evidence that defendant LaNore failed to properly diagnose plaintiff's medical condition or that he provided deficient treatment.  No reasonable trier of fact could find in plaintiff's favor on the subjective component of his Eighth Amendment claim against defendant.

### Recommended Disposition

For the reasons set forth herein, I recommend that defendant LaNore's motion for summary judgment (docket # 64) be granted, and that a final judgment be entered in favor of defendants CMS, Hutchinson, and LaNore on all plaintiff's claims.

Dated:   June 18, 2009                                  /s/  Joseph G. Scoville
                                                                          United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

---

[4] Plaintiff's complaint did not invoke the court's supplemental jurisdiction.  If plaintiff was attempting to assert a medical malpractice claim, he did not comply with the notice of intent and other statutory prerequisites to bringing a medical malpractice claim under Michigan law.  *See* MICH. COMP. LAWS §§ 600.2912b and 600.2912d; *Burton v. Reed City Hosp.*, 691 N.W.2d 424, 427-28 (Mich. 2005); *Allen v. Aharauka*, No. 283890, 2009 WL 1221255, at * 1 (Mich. Ct. App. May 5, 2009).